IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

SAMANTHA WINNINGHAM,     )
                                  )
v.                              )     NO. 2:11-0032
                                  )
CAROLYN W. COLVIN,        )
     Acting Commissioner of     )
     Social Security[1]         )

To: The Honorable John T. Nixon, Senior District Judge


## REPORT AND RECOMMENDATION

The plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the plaintiff's claim for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"), as provided by the Social Security Act.

Upon review of the Administrative Record as a whole, the Court finds that the Commissioner's determination that the plaintiff is not disabled under the Act is supported by substantial evidence in the record as required by 42 U.S.C. § 405(g), and that the plaintiff's motion for judgment on the administrative record (Docket Entry No. 13) should be DENIED.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for former Commissioner Michael J. Astrue as the defendant in this suit.

# I. INTRODUCTION

On October 20, 2006, the plaintiff filed applications for SSI and DIB, alleging a disability onset date of November 8, 2004. (Tr. 98, 103.) The plaintiff alleged disability due to chronic obstructive pulmonary disease ("COPD"), partial removal of her right lung, and emphysema. (Tr. 121.) Her applications were denied initially and upon reconsideration. (Tr. 14, 59-68, 73-78.)

The plaintiff appeared and testified at a hearing before Administrative Law Judge ("ALJ") Robert L. Erwin on March 3, 2009. (Tr. 23-53.) On April 1, 2009, the ALJ issued an unfavorable decision. (Tr. 14-22.) The plaintiff filed a request for review of the ALJ's decision (tr. 10), and on February 1, 2011, the Appeals Council denied the plaintiff's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-3.)

# II. BACKGROUND

The plaintiff was born on April 5, 1967, and she was thirty-seven years old as of her alleged disability onset date. (Tr. 28, 103, 116.) She has an eleventh grade education and has previously worked as a waitress, sewing machine operator, and bar manager. (Tr. 30, 49, 122.) The plaintiff has been unemployed since 2002. (Tr. 36, 121-22.)

## A. Chronological Background: Procedural Developments and Medical Records

On March 19, 2004, the plaintiff presented to Cookeville Medical Center ("CMC") complaining of mild nervousness, anxiety, and insomnia. (Tr. 219.) It was noted that she smoked one pack of cigarettes per day for the past ten years. *Id*. The plaintiff reported that she had been

prescribed Ambien and Wellbutrin[2] but that Ambien was not helping her sleep. *Id.* She was prescribed Valium for her insomnia and Percocet for a breast lump. (Tr. 221.)

From April to September 2004, the plaintiff continued to present to CMC for check-ups and prescription refills. (Tr. 198-213.) In May, the plaintiff related that her sleeping and depression were improving (tr. 210), and she was prescribed Valium and Lexapro for depression, Advair and Oxycontin for COPD, and Percocet for a rib sprain. (Tr. 211-12.) In June, the plaintiff reported that Lexapro made her "feel bad," so she was prescribed Zoloft, Valium, and Wellbutrin for depression; and given refills for Oxycontin, Percocet, and Advair. (Tr. 207-09.) During August and September, the plaintiff reported that Wellbutrin and Zoloft were not helping, and she was given a prescription for a higher dosage of Zoloft as well as prescriptions for Valium, Oxycontin, and Percocet. (Tr. 198-202.)

On September 23, 2004, the plaintiff returned to CMC with complaints of moderate to severe chest pain with a stabbing sensation in her ribs that radiated to her left arm. (Tr. 195.) She was prescribed Trazodone for insomnia as well as Oxycontin, Percocet, and Xanax. (Tr. 197.) A CT scan revealed a 1.3 cm mass on the plaintiff's upper right lung. (Tr. 197, 256.) A subsequent biopsy of the lung mass, on October 7, 2004, was positive for malignancy. (Tr. 225.) The plaintiff was referred to Dr. G. Todd Chapman for evaluation and treatment of stage one lung cancer. (Tr. 374.) On November 8, 2004, Dr. Chapman performed a thoracotomy[3] with a resection of the right upper lobe,

---

[2] Ambien is a sedative used to treat insomnia. Wellbutrin is an antidepressant. Saunders Pharmaceutical Word Book 37, 763 (2009) ("Saunders").

[3] A thoracotomy is a "surgical incision into the pleural space through the wall of the chest." Dorland's Illustrated Medical Dictionary 1905 (2003) ("Dorland's").

a mediastinal lymphadenectomy,[4] and bronchoscopy,[5] all with no complications and no evidence of metastatic disease. (Tr. 271-72.) A surgical pathology report noted that the surgical and pleural margins, as well as the regional lymph nodes, were tumor free. (Tr. 254.)

The plaintiff continued to progress satisfactorily post-surgery. (Tr. 249-50.) An x-ray of the plaintiff's chest on December 1, 2004, showed "right apical pleural thickening" and "mild hyperinflation." (Tr. 262.) A November 16, 2005 x-ray of her chest showed no effusions, no acute disease, the chest appeared stable, and no new infiltrates, masses, or nodules were detected.[6] (Tr. 401.) On November 15, 2006, a scan showed no parenchymal masses, no pleural abnormalities, clear lungs, normal cardiovascular structures, and "a stable chest with post-surgical changes." (Tr. 403.) Similarly, an x-ray of the plaintiff's chest on November 14, 2007, revealed "[n]o acute disease," evidenced no significant changes from the previous year, and showed the plaintiff's lungs to be "well-expanded and clear." (Tr. 459.) The plaintiff's most recent chest x-ray, taken on January 14, 2009, showed "[n]o pleural effusion" and "[n]o acute cardiopulmonary process." (Tr. 457.)

The plaintiff underwent several lung functioning tests before and after her surgery. On April 1, 2004, seven months before her surgery, pulmonary function test results were normal and showed a mild decrease in ventilation function. (Tr. 236.) Similarly, pulmonary lung tests from July 12, 2006, and July 12, 2008, evidenced "a mild obstructive lung defect." (Tr. 289, 318-19.)

---

[4] A lymphadenectomy is a "surgical excision of a lymph node or nodes." *Id*. at 1074.

[5] A bronchoscopy is the "examination of the bronchi through a bronchoscope." *Id.* at 254.

[6] The x-ray did reveal "emphysematous changes." (Tr. 401.)

Pulmonary lung function test results from January 16, 2007, indicated "normal spirometry" and only "mild restriction" in lung function capability. (Tr. 417-19.)

Dr. Kenneth Colburn treated the plaintiff from November 16, 1999, through August 31, 2006. (Tr. 323-51.) His treatment notes from August 19, 2005, show that the plaintiff denied having anxiety; her current depression medication, Wellbutrin, was "helping some;" her sleep had improved "some;" her energy was "up a little;" and she had been smoking on occasion. (Tr. 346.) On July 11, 2006, the plaintiff returned to Dr. Colburn complaining of low rib pain, mid back pain, and occasional wheezing at night. *Id.* The plaintiff rated her pain at a 7-8 on a 10 point pain scale. *Id*. Additionally, she reported that she had only smoked once in the past six months and was exercising twice daily for twenty minutes at a time. *Id*. Dr. Colburn prescribed Spiriva.[7] *Id*. A chest x-ray was normal. (Tr. 317.) On July 31, 2006, Dr. Colburn diagnosed the plaintiff with post-operative chronic rib and back pain, prescribed Elavil,[8] and referred her to a pain clinic. (Tr. 324.)

Dr. Michael Cox, an internist, treated the plaintiff from August 2006 through November 2008. (Tr. 356-67, 408-23, 447-55, 462-75.) On September 26, 2006, Dr. Cox assessed the plaintiff with "[a]typical chest pain [and] COPD." (Tr. 361.) The plaintiff's pain had not been well controlled with Lyrica[9] in the past, so Dr. Cox prescribed Topamax to address the plaintiff's complaints of

---

[7] Spiriva is medication taken through an inhaler used to treat emphysema and COPD. Saunders at 657.

[8] Elavil is a tricyclic antidepressant. Saunders at 256.

[9] Lyrica is an anticonvulsant used to manage neuropathic pain, neuralgia, fibromyalgia, and generalized anxiety disorder. Saunders at 420.

pain.[10] (Tr. 361, 363.) Although it appears that Dr. Cox may have referred the plaintiff to a pain specialist on September 8, 2006 (tr. 363), he indicated on September 26, 2006, that he would consider referring her to a pain specialist if her pain were not better controlled by her next visit. (Tr. 361, 415.) In any event, there is no indication in the record that the plaintiff ever visited a pain specialist. On October 10, 2006, the plaintiff reported that Topamax helped reduce her pain, her pain had become "less severe [and] less constant," and she ranked her pain at a 5 on a 10 point pain scale. (Tr. 359.) Dr. Cox prescribed Tramadol[11] and continued to prescribe Topamax. *Id.* On December 8, 2006, the plaintiff returned to Dr. Cox complaining that Topamax caused nausea and vomiting. (Tr. 411.) Dr. Cox discontinued Topamax and prescribed Lamictal.[12] *Id.* Additionally, Dr. Cox diagnosed the plaintiff with thoracic neuralgia and COPD. *Id.* Throughout 2007 and 2008, Dr. Cox prescribed Amitriptyline, Combivent, and Spiriva.[13] (Tr. 462, 465-75.)

On January 17, 2007, Dr. Charles Settle, a Tennessee Disability Determination Services ("DDS") non-examining consultative physician, completed a physical Residual Functional Capacity ("RFC") assessment. (Tr. 424-31.) Dr. Settle opined that the plaintiff could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; stand and/or walk about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; and push and/or pull with no limitations. (Tr. 425.) Dr. Settle found that the plaintiff had no postural, manipulative, visual, or

---

[10] Topamax is an anticonvulsant used to treat seizures, migraine headaches, and a variety of psychiatric disorders. Saunders at 712.

[11] Tramadol is a central analgesic used to treat moderate to severe pain. Saunders at 715.

[12] Lamictal is an anticonvulsant used to treat seizures and bipolar disorder. Saunders at 396.

[13] Amitriptyline is a tricyclic antidepressant. Combivent is a medication taken with an inhaler and it is used to treat COPD. Saunders at 43, 178.

communicative limitations; however, he found that the plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (Tr. 426-28.) Dr. Settle explained that the plaintiff's "statements about her symptoms and functional limitations are only partially credible as the severity alleged is not completely consistent with the objective findings from the evidence in the file." (Tr. 429.) Additionally, he explained that, in his opinion, the plaintiff's impairments were non-severe, there was no medically determinable impairment in the record "which could reasonably be expected to produce the restrictions alleged," and the plaintiff's impairments could be resolved "with appropriate pain management." (Tr. 431.)

On March 11, 2007, Dr. Cox completed a Medical Source Statement assessing the plaintiff's physical ability to perform work-related activities. (Tr. 432-35.) Dr. Cox found that the plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk without limitations; sit with normal breaks about four hours in an eight-hour workday; and push and/or pull ten pounds with her upper extremities. (Tr. 432.) Dr. Cox opined that the plaintiff's ability to sit and push was limited due to chest wall pain and that she would have to alternate between sitting and standing every thirty minutes and take unscheduled breaks every hour. (Tr. 432-33.) Additionally, while the plaintiff could tolerate moderate stress, she would frequently experience "pain severe enough to interfere with attention and concentration." (Tr. 433.) Dr. Cox opined that her impairments would likely produce "good days" and "bad days" and that she would likely be absent from work more than four times a month. *Id*. Dr. Cox also opined that, as a result of the plaintiff's chest wall pain, she could only occasionally climb, balance, kneel, crouch, and crawl, and, while she could handle, finger and feel without limitations, she could reach in all directions only occasionally. (Tr. 434.) Finally, Dr. Cox opined that the plaintiff had no seeing, hearing, or speaking

limitations but, because of her asthma, should avoid concentrated exposure to extreme cold, extreme heat, dust, humidity, wetness, fumes, odors, dusts, gases, perfumes, solvents, cleaners, soldering fluxes, cigarette smoke, and chemicals.[14] (Tr. 434-35.)

On May 7, 2007, Dr. Robert Doster, a DDS non-examining consultative physician, assessed the plaintiff's RFC. (Tr. 439-46.) Dr. Doster noted that, although the plaintiff had a cancerous tumor removed from her right upper lung, there was "no evidence of recurrence or metastases, and no decrease in lung function." (Tr. 446.) Dr. Doster found no change in the plaintiff's limitations and thus "affirmed" Dr. Settle's previous RFC assessment. (Tr. 424-31, 445-46.)

On January 14, 2009, the plaintiff returned to Dr. Chapman's office for a five year post-surgical checkup. (Tr. 478.) Dr. Chapman's treatment notes indicate that the plaintiff was "doing well," and had no reoccurrence of carcinoma in the past five years. *Id*. In addition, Dr. Chapman noted that the plaintiff "has occasional pleurisy."[15] *Id*.

On February 11, 2009, Dr. Cox completed a second Medical Source Statement. (Tr. 479-82.) He opined that the plaintiff could lift twenty pounds occasionally and ten pounds frequently, stand and/or walk about six hours in an eight hour workday, and sit without limitations. (Tr. 479.) Dr. Cox further opined that the plaintiff would often "experience pain severe enough to interfere with attention and concentration," but she was mentally capable of work involving a moderate amount

---

[14] It appears that the March 11, 2007 Medical Source Statement is the first instance in which Dr. Cox refers to the plaintiff's having asthma.

[15] Pleurisy is the "inflamation of the pleura, with exudation into its cavity and upon its surface." Dorland's at 1451 (emphasis in the original). Although Dr. Chapman noted that the plaintiff had "occasional pleurisy" (tr. 476, 478), in no other place in the record does any other doctor even mention pleurisy.

of stress. (Tr. 480.) In Dr. Cox's opinion, the plaintiff would need to take unscheduled breaks every two hours during an eight-hour workday, was likely to experience "good days" and "bad days," and would likely be absent from work more than four times each month due to her impairments. *Id*. Dr. Cox also found that the plaintiff no longer had any pushing, pulling, or reaching restrictions. (Tr. 480-81.) Finally, Dr. Cox confirmed that the plaintiff still had no restrictions on her ability to see, hear, or speak, but because of her COPD[16] she should avoid concentrated exposure to extreme cold, extreme heat, dust, humidity, wetness, fumes, odors, dusts, gases, perfumes, solvents, cleaners, soldering fluxes, cigarette smoke, and chemicals. (Tr. 481-82.)

### B. Hearing Testimony

At the hearing on March 3, 2009, the plaintiff was represented by counsel, and the plaintiff and Edward Smith, a vocational expert ("VE"), testified. (Tr. 23.) The plaintiff testified that she had an eleventh-grade education, was forty-one years old, divorced, and lived with her nine and twelve year old children. (Tr. 28-30.) The plaintiff stated that she had a valid driver's license and drove her car "Monday through Friday, every day." (Tr. 30.)

From 2001 to 2002 the plaintiff worked as a bar manager, which required her to check inventory, clean, cook, oversee workers, manage scheduling, and prepare payroll. (Tr. 47-48.)The plaintiff explained that her job ended when the business was sold. (Tr. 36.) The plaintiff also worked as a receptionist for a city newspaper for two weeks in February 2009 for one hour per day during

---

[16] In his 2007 Medical Source Statement, Dr. Cox found environmental limitations based upon the plaintiff's having asthma. *See* n.14 *supra*.

lunch hour. (Tr. 31-32.) However, the plaintiff testified that her back pain would prevent her from performing this type of work on a regular basis because it would require her to sit all day long. (Tr. 32.)

The plaintiff testified that her back pain was a result of pleurisy that developed after her surgery in 2004. (Tr. 33.) She relayed that she took medication for pleurisy and that her surgeon, Dr. Chapman, told her that she would always have this condition.[17] (Tr. 33, 40.) She also testified that she has had problems with her right shoulder since her 2004 surgery. (Tr. 40-41.) The plaintiff further testified that she was currently experiencing "some" shoulder problems, specifically, difficulty reaching, bending over, and lifting objects. (Tr. 41.) For example, the plaintiff related that she has to use both hands to lift a gallon of milk. (Tr. 42.)

The plaintiff testified that she had experienced breathing problems for years and even before undergoing surgery. (Tr. 33-34.) She related that she took medication for her respiratory conditions through an inhaler-like "hand-held breather" and that she stopped smoking in 2004. (Tr. 34.) The plaintiff reported that she used an "inhaling treatment" once a day. (Tr. 39.)

The plaintiff testified that she had trouble sleeping and sometimes took naps. (Tr. 35.) She reported being able to care for her personal needs, having no difficulty dressing herself, shopping for groceries, and performing the majority of the household tasks, including cooking, washing dishes, and doing laundry. (Tr. 36-37.) She reported that she visits with family regularly but does not belong to any churches or clubs, that she tries to walk a short distance at least once per week as exercise, and that she quit gardening due to her impairments. (Tr. 37, 46.) The plaintiff testified that she could

---

[17] There is nothing in Dr. Chapman's records to this effect.

sit for 30-45 minutes, stand for thirty minutes at a time, and walk less than one-half of a mile without difficulty. (Tr. 37-38.) She indicated that she did not require an assistive device for ambulation but that she was limited to lifting about five pounds because of a pulling sensation in her back. (Tr. 38.) She also testified that odors associated with cooking and home cleaning products sometimes bother her. (Tr. 38-39.)

The plaintiff related that 2-3 times per week she stays at school with her youngest child for about an hour because his autism makes the home-to-school and school-to-home transitions difficult, although sometimes her pleurisy keeps her from staying with her son, and instead of going to school with him she "go[es] to bed" for 2-3 hours. (Tr. 43-44.) She testified that her pain from pleurisy, when it is at its worst, results in a pain level of 9 on a 10 point pain scale and that she tries to relieve her pain by taking ibuprofen. (Tr. 44.) Both lifting and extreme temperatures cause her pain, and as a result, she is unable perform such activities as mowing her lawn. (Tr. 44-46.)

The VE classified the plaintiff's past work as a waitress, sewing machine operator, and bar manager as light, semi-skilled work. (Tr. 49.) The ALJ asked the VE whether a hypothetical person would be able to obtain work in the regional and national economy who was limited to light work, could do no more than occasional climbing, and:

> could stand or walk up to six hours out of an eight-hour day, and sit up to six hours out of an eight-hour day. But she would need to be able to alternate sitting and standing for comfort throughout the day. She shouldn't do any more than occasional reaching in any particular direction with her right arm, because of a problem she has with her right shoulder. And because of breathing problems, she's [to] avoid concentrated exposure to dust, fumes, smoke, chemicals, or noxious gases as well as temperature extremities.

(Tr. 50.) The VE responded that such a person would be unable return to the plaintiff's past relevant work given these limitations; however, she could work as a textile checker, officer helper, or storage facility rent-bill clerk. (Tr. 50-51.) Finally, the VE testified that an individual who was also unable to sit for four hours per day and would miss work four times per month would be precluded from all employment. (Tr. 51-52.)

## III. THE ALJ'S FINDINGS

The ALJ issued an unfavorable ruling on April 1, 2009. (Tr. 14-22.) Based upon the record, the ALJ made the following findings:

1.  The claimant met the insured status requirements of the Social Security Act through December 31, 2004.

2.  The claimant has not engaged in substantial gainful activity since November 8, 2004, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3.  The claimant has the following severe impairments: chronic obstructive pulmonary disease; adenocarcinoma of the lung (20 CFR 404.1521 et seq. and 416.921 et seq.).

                                    ***

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently; stand and/or walk about six hours in an eight-hour workday; and sit about six hours in an eight-hour

workday; except that she can do no more than occasional climbing; no more than occasional reaching, right shoulder, any direction; and must avoid concentrated exposure to temperature extremes.

\*\*\*

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

\*\*\*

7.    The claimant was born on April 5, 1967 and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.    The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

\*\*\*

11.    The claimant has not been under a disability, as defined in the Social Security Act, from November 8, 2004 through the date of this decision. (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 16-22.)

# IV. DISCUSSION

## A. Standard of Review

The determination of disability under the Act is an administrative decision, and the only questions before this Court are whether the decision of the Commissioner is supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching his conclusion. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakely v. Comm'r of Soc. Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *Le Master v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g., Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit

findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g., Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

The Commissioner must employ a five-step evaluation process in determining the issue of disability. *See, e.g., Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (citing *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)). The original burden of establishing disability is on the plaintiff, and impairments must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. § 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), 404.1513(d). First, the plaintiff must show that she is not engaged in "substantial gainful activity" at the time she seeks disability benefits. *Id.* (citing 20 C.F.R. §§ 404.1520(b), 416.920(b)); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A plaintiff who is performing substantial gainful activity is not disabled no matter how severe the plaintiff's medical condition may be. *See, e.g., Dinkel v. Sec'y of Health & Human Servs.*, 910 F.2d 315, 318 (6th Cir. 1990).

Second, the plaintiff must show that she suffers from a severe impairment that meets the twelve month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 Fed. Appx. 83, 85 (6th Cir. Sept. 23, 2004). A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." *Barnhart v. Thomas*, 540 U.S. 20, 24, 124 S. Ct. 376, 157 L. Ed.2d 333 (2003) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). Basic work activities are "the abilities and aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; [c]apacities for seeing, hearing, and speaking; [u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment; [r]esponding appropriately to supervision,

co-workers and usual work situations; and [d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b). The Commissioner is required to consider the combined effects of impairments that individually are not severe but cumulatively may constitute a severe impairment. 42 U.S.C. § 423(d)(2)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988).

Third, if the plaintiff is not engaging in substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, the plaintiff is presumed disabled without further inquiry, regardless of age, education, or work experience. *Id.* (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)). The plaintiff may establish that she meets or equals a listed impairment and that the impairment has lasted or is expected to last for at least twelve months or result in death. *See Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 350 (6th Cir. 1988). The plaintiff is not required to show the existence of a listed impairment in order to be found disabled, but such a showing results in an automatic finding of disability. *See Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, she is not disabled. *Id.* The plaintiff has the burden of proving inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474 ("Through step four, the [plaintiff] bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work . . . ."); *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 109 (6th Cir. 1989). If the plaintiff fails to carry this burden, she must be denied disability benefits.

Once the plaintiff establishes a *prima facie* case that she is unable to perform her prior relevant employment, the burden shifts in step five to the Commissioner to show that the plaintiff can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs the plaintiff can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying her burden under appropriate circumstances). It remains the plaintiff's burden to prove the extent of her functional limitations. *Her*, 203 F.3d at 391. Even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in significant numbers in the national economy that the plaintiff can perform, she is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a plaintiff's claim at step two of the evaluative process is appropriate in some circumstances).

**B. The Five Step Inquiry**

In this case, the ALJ resolved the plaintiff's claim at step five of the five-step process. At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity since November 8, 2004, her alleged onset date of disability. (Tr. 16.) At step two, the ALJ determined that the plaintiff had severe impairments including COPD and adenocarcinoma of the lung. *Id*. At step three, the ALJ found that the plaintiff's impairments neither met nor medically equaled a listed impairment. (Tr. 18.) At step four, the ALJ found that the plaintiff was unable to perform her past relevant work. (Tr. 20.) At step five, the ALJ found that the plaintiff could work as a textile checker, officer helper, or storage facility rental clerk. (Tr. 21-22.)

**C. The Plaintiff's Assertions of Error**

The plaintiff argues that the ALJ erred in rejecting the opinion of her treating physician, Dr. Cox, and in evaluating her subjective complaints of pain. Docket Entry No. 14, at 11-15.

**1. The ALJ did not commit reversible error when assessing Dr. Cox's medical opinion.**

The plaintiff contends that the ALJ erred in rejecting Dr. Cox's assessment of her physical limitations. Docket Entry No. 14, at 11. Given the regularity with which Dr. Cox examined the plaintiff (tr. 356-67, 408-23, 447-55, 462-77), he is classified as a treating source under 20 C.F.R. §§ 404.1502 and 416.902.[18] Generally, an ALJ is required to give "controlling weight" to the medical

_____

[18] A treating source is defined as:

opinion of a treating physician, as compared to the medical opinion of a non-treating physician, if the opinion of the treating source is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2).[19] *See also Tilley v. Comm'r of Soc. Sec.*, 394 Fed. Appx. 216, 222 (6th Cir. Aug. 31, 2010); *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009). This is commonly known as the treating physician rule. *See* Soc. Sec. Rul. 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Even if a treating source's medical opinion is not given controlling weight, it is "'still entitled to deference and *must be weighed using all of the factors provided in 20 C.F.R. 404.1527 . . . .*'" *Fisk v. Astrue*, 253 Fed. Appx. 580, 585 (6th Cir. Nov. 9, 2007) (quoting Soc. Sec Rul. 96-2p, 1996 WL 374188, at *4) (emphasis in original). The ALJ must consider:

> your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s).

20 C.F.R. §§ 404.1502, 416.902.

[19] Effective March 26, 2012, the numbering for the treating physician rules changed. Section 416.927(d)(2) became section 416.927(c)(2), and the identically worded and interpreted section 404.1527(d)(2) became section 404.1527(c)(2). *See Johnson-Hunt v. Comm'r of Soc. Sec.*, 2012 WL 4039752, at *6 n.6 (6th Cir. Sept. 14, 2012).

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant.

*Meece v. Barnhart*, 192 Fed. Appx. 456, 461 (6th Cir. Aug. 8, 2006) (quoting 20 C.F.R. § 404.1527(c)(2)-(6)). The ALJ must also provide "good reasons" for the resulting weight given to the treating source. Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)). The "good reasons" must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* If an ALJ fails to adhere to this procedural requirement, the case should be remanded for further clarification.[20] *Wilson*, 378 F.3d at 544-45.

In this case, Dr. Cox completed two Medical Source Statements, one dated March 11, 2007 (tr. 432-35), and one dated February 11, 2009. (Tr. 479-82.) The ALJ apparently only addressed Dr. Cox's earlier opinion.[21] In assessing Dr. Cox's Medical Source Statement from March 11, 2007, the ALJ explained:

> As for the opinion evidence, the undersigned does not find Dr. Cox's determinations credible with regard to the claimant's ability to do work-related activities . . . . In spite of a January 2007 pulmonary function test noting normal spirometry pre-med

---

[20] The rationale for the "good reason" requirement is to provide the claimant with a better understanding of the reasoning behind the decision in her case and to ensure that the ALJ properly applied the treating physician rule. *Wilson*, 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

[21] The ALJ cited to Exhibit 15F, which is Dr. Cox's 2007 Medical Source Statement, but did not cite to Exhibit 22F, which is Dr. Cox's 2009 Medical Source Statement. (Court Transcript Index; tr. 20.)

and only mild restriction post-med . . . , Dr. Cox's assessment is incredibly over-restrictive, and thus internally inconsistent. His conclusions are, at best, tenuous, patently sympathetic to the claimant's subjective complaints, and unsupported by the objective findings. Accordingly, the undersigned does not accept Dr. Cox's conclusions with regard to the claimant's residual functional capacity.

(Tr. 20; internal citations omitted.)

The ALJ focused on the factors of inconsistency and supportability in finding that Dr. Cox's assessment should not be given controlling weight. (Tr. 20.) The ALJ noted that Dr. Cox's March 2007 Medical Source Statement outlined restrictions that were much more severe than would be expected based upon the plaintiff's January 2007 pulmonary function test, which Dr. Cox ordered. (Tr. 20, 421-23, 432-35.) The results of the pulmonary functioning test showed "normal spirometry" and only indicated "mild restriction." (Tr. 421-23.) Less than two months after this test was conducted, however, Dr. Cox opined that the plaintiff's physical impairments were quite severe and would limit her from doing even sedentary work. (Tr. 432-35.) According to Dr. Cox in 2007, the plaintiff would be unable to lift more than twenty pounds occasionally and ten pounds frequently, sit more than four hours in an eight-hour workday, push and/or pull more than ten pounds with her upper extremities, would need to take unscheduled breaks every hour, would frequently experience pain severe enough to interfere with attention and concentration, and would likely miss work more than four times per month. (Tr. 432-33.) Additionally, Dr. Cox opined that the plaintiff could only occasionally climb, balance, kneel, crouch, or crawl and that she was limited reaching in all directions. (Tr. 434.) Finally, he opined that the plaintiff's asthma would require her to avoid concentrated exposure to humidity, wetness, extreme temperatures, fumes, odors, dusts, gases, perfumes, solvents, cleaners, soldering fluxes, cigarette smoke, and chemicals. (Tr. 435.) The ALJ

found these restrictions to be "incredibly over-restrictive," and, in light of the normal lung functioning test, internally inconsistent with Dr. Cox's knowledge of the plaintiff's condition. (Tr. 20.)

The ALJ also addressed the discrepancies between Dr. Cox's March 2007 Medical Source Statement and the physical RFC assessments completed by DDS consultative physicians, Drs. Settle and Doster, to whose opinions he gave some weight. (Tr. 19-20.) Both consultative physicians arrived at identical conclusions regarding the plaintiff's physical limitations. (Tr. 424-31, 439-46.) Drs. Settle and Doster opined that the plaintiff could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; stand and/or walk about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; and push and/or pull with no limitations. (Tr. 425, 440.) Drs. Settle and Doster agreed with Dr. Cox that the plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (Tr. 428, 443.) Dr. Settle opined that there was no medically determinable impairment in the record that could reasonably be expected to produce the restrictions alleged and that the plaintiff's impairments could be resolved "with appropriate medical management." (Tr. 431.) He classified the plaintiff's COPD and chest pain as "non severe" and found that the plaintiff's allegations were only partially credible and "not completely consistent with the objective findings" in the record. (Tr. 429, 431.) Dr. Doster, in "affirming" Dr. Settle's physical RFC, also noted that Dr. Cox's analysis was "consistent with [the plaintiff's] report," but unsupported by objective findings. (Tr. 445.) Dr. Doster noted that there was no evidence of decreased lung function and no evidence of recurrence or metastases following the removal of a cancerous tumor from the plaintiff's lung. (Tr. 446.) Thus, Dr. Doster also concluded that the plaintiff's complaints were only partially credible based on clinical findings. *Id.*

The ALJ chose to credit the opinions of the consultative physicians over Dr. Cox's opinion. The ALJ did not err in assigning less than significant weight to Dr. Cox's March 2007 Medical Source Statement. Focusing on the factors of supportability and inconsistency with the record, the ALJ provided "good reasons" for awarding minimal weight to Dr. Cox's 2007 opinion, and there is substantial evidence in the record to support his determination.

This conclusion, however, does not resolve the matter entirely. Although not mentioned by the parties, the ALJ did not address Dr. Cox's second Medical Source Statement completed on February 11, 2009. (Tr. 14-22, 479-82).

As discussed above, the ALJ must provide good reasons for the weight he assigns to a treating source's medical opinion and those reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec Rul. 96-2p, 1996 WL 374188, at *5 (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)). *See also Wilson*, 378 F.3d at 544 (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The Sixth Circuit has plainly held that a reversal and remand of a denial of benefits is warranted, even if the record may contain substantial evidence that supports the Commissioner's decision, when the ALJ fails to provide good reasons for discounting the medical opinion of the plaintiff's treating physician. *Friend v. Comm'r of Soc. Sec.*, 375 Fed. Appx. 543, 551 (6th Cir. April 28, 2010) (citing *Wilson*, 378 F.3d at 544). The failure to follow "the procedural requirement 'of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Friend*, 375 Fed. Appx. at 551 (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007)). *See also Wilson*,

378 F.3d at 546 ("A court cannot excuse the denial of a mandatory procedural protection simply because . . . there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely.").

The Sixth Circuit, however, has determined that there are circumstances when noncompliance with the good reasons requirement is "harmless error," if: "'(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;' (2) 'if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;' or (3) 'where the Commissioner has met the goal of § 1527[(c)](2)-the provision of the procedural safeguard of reasons-even though she has not complied with the terms of the regulation.'" *Friend*, 375 Fed. Appx. at 551 (quoting *Wilson*, 378 F.3d at 547). Should the third circumstance occur, "the procedural protections at the heart of the rule may be met when the 'supportability' of a doctor's opinion, or its consistency with other evidence in the record, is indirectly attacked via an ALJ's analysis of a physician's other opinions or his analysis of the claimant's ailments." *Id.* (citing *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 470-72 (6th Cir. Aug. 26, 2006); *Hall v. Comm'r of Soc. Sec.*, 148 Fed. Appx. 456, 464 (6th Cir. Sept. 2, 2005)). The function of the good reason requirement is to provide clarity and transparency to the reviewing body and, more importantly, to the plaintiff, but it is not a "procrustean bed" that requires "an arbitrary conformity at all times." *Id.*

It was error for the ALJ to entirely fail to address a later medical opinion by Dr. Cox. Although the ALJ gave good reasons for rejecting Dr. Cox's March 2007 opinion, he failed to give good reasons for not accepting Dr. Cox's February 2009 opinion. The error is exacerbated because the two opinions are not identical. (Tr. 432-35, 479-82.) Dr. Cox's 2009 Medical Source Statement

lessens some restrictions while increasing others. (Tr. 479-82.) However, upon close examination, the Court concludes that the ALJ's error in failing to address Dr. Cox's later Medical Source Statement was harmless. In reaching this conclusion, the Court has compared Dr. Cox's 2007 and 2009 Medical Source Statements, the ALJ's formulation of the plaintiff's RFC, and the ALJ's stated reasons for discrediting Dr. Cox's earlier opinion. The Court concludes that the ALJ either adopted limitations equal to or greater than those found in Dr. Cox's later opinion, or, when he did not do so, the reasons that the ALJ gave for not adopting Dr. Cox's 2007 opinion apply equally to Dr. Cox's 2009 opinion.

In several instances, the ALJ adopted limitations that either equaled or exceeded those found by Dr. Cox in his later opinion. For example, in both 2007 and 2009, Dr. Cox opined that the plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently (tr. 432, 479), and the ALJ adopted these limitations. (Tr. 18.) In 2007, Dr. Cox opined that the plaintiff was not limited standing or walking; however, in 2009, it was his position that the plaintiff could stand/walk for only six hours in an eight-hour day. (Tr. 432, 479.) The ALJ included a six-hour stand/walk limitation in the plaintiff's RFC. (Tr. 18.) In his 2007 opinion, Dr. Cox opined that the plaintiff could sit for only four hours in an eight-hour workday, but in 2009, he removed this restriction entirely. (Tr. 432, 479.) The ALJ, however, found that the plaintiff could sit for six hours (tr. 18), thus limiting the plaintiff more than Dr. Cox did in his later opinion. In 2007, Dr. Cox found that the plaintiff was limited pushing and pulling, reaching in all directions (including overhead), and would need to alternate between sitting and standing to relieve her pain. (Tr. 433-34.) In 2009, he removed these restrictions. (Tr. 480-81.) The ALJ agreed that such restrictions were inappropriate, except that he included a limitation for no more than occasional reaching due to the plaintiff's right shoulder

25

pain. (Tr. 18.) Thus, for these specific limitations, Dr. Cox's 2009 opinion would have no bearing on the plaintiff's RFC because the ALJ adopted limitations that were equal to or greater than those found by Dr. Cox.

In other instances, the ALJ's given reasons for rejecting Dr. Cox's 2007 opinion apply with equal force to his 2009 opinion. For example, in both Medical Source Statements, Dr. Cox included identical opinions as to the plaintiff's postural limitations, that the plaintiff would have "good days" and "bad days," and that she would be required to miss work more than four times a month. (Tr. 433-34, 480-81.) As discussed above, the ALJ found these limitations unsupported by the record[22] and, although he only specifically addressed Dr. Cox's 2007 opinion, the ALJ's reasoning applies equally to Dr. Cox's later opinion. Similarly, Dr. Cox opined in 2007 that the plaintiff should avoid concentrated exposure to a host of environmental limitations. (Tr. 435.) The ALJ found that, except for temperature extremes, such limitations were not supported by the record. (Tr. 18.) Accordingly, it follows that the ALJ would have found Dr. Cox's 2009 opinion, which further limits the plaintiff to avoiding even moderate exposure to the same environmental limitations (tr. 482), similarly unsupported by the record.

The Court does not take the ALJ's failure to specifically address Dr. Cox's 2009 Medical Source Statement lightly. However, after a thorough review, the Court concludes that the procedural safeguards of the treating physician rule were met even if the technical requirements of that rule were not. The ALJ incorporated many of the restrictions found in Dr. Cox's 2009 opinion, and, indeed, incorporated some greater restrictions. Additionally, the reasons that the ALJ gave for not adopting

___

[22] The ALJ did include a postural limitation for no more than occasional climbing in the plaintiff's RFC. (Tr. 18.)

Dr. Cox's 2007 Medical Source Statement indirectly attack Dr. Cox's 2009 opinion as well. *See Friend*, 375 Fed. Appx. at 551. Similarly, the ALJ's decision to give weight to the DDS consultative physicians' opinions indirectly attacks Dr. Cox's 2009 opinion, which was more restrictive than theirs. Accordingly, the Court concludes that, although the ALJ erred by not explicitly assessing Dr. Cox's second opinion, the error was harmless.

### 2. The ALJ properly evaluated the plaintiff's subjective complaints of pain.

The plaintiff also argues that the ALJ erred in evaluating the credibility of her subjective complaints of pain because he "did not consider the record as a whole" and took her statements "out of context." Docket Entry No. 14, at 13-15. The defendant counters that the ALJ correctly determined that the objective medical evidence did not support the plaintiff's allegations of disabling pain. Docket Entry No. 15, at 15-18.

The ALJ is charged with evaluating the credibility of the plaintiff at the hearing, and the ultimate decision of credibility rests with the ALJ. *See, e.g., Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The ALJ's credibility finding is entitled to deference "because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *See Buxton v. Halter*, 346 F.3d 762, 773 (6th Cir. 2001) (internal citations omitted). If the ALJ rejects the plaintiff's complaints, however, he must clearly articulate his reason for this finding. *Wines v. Comm'r of Soc. Sec.*, 268 F. Supp. 2d 954, 958 (N.D. Ohio 2003) (citing *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. July 7, 1994)). Social Security Ruling 96-7p emphasizes that credibility determinations must find support in the record and

not be based upon the "intangible or intuitive notion[s]" of the ALJ. 1996 WL 374186, at *4. In assessing the plaintiff's credibility, the ALJ must consider the record as a whole, including the plaintiff's complaints, lab findings, information provided by treating physicians, and other relevant evidence. *Id*. at *5. An "ALJ may distrust a claimant's allegations of disabling symptomatology if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict each other." *Moon v. Sullivan*, 923 F.2d 1175, 1183 (6th Cir. 1990). Finally, the ALJ must explain his credibility determination such that both the plaintiff and subsequent reviewers will know the weight given to the plaintiff's statements and the reason for that weight. Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4.

Both the SSA and the Sixth Circuit have provided guidelines for use in analyzing a plaintiff's subjective complaints of pain. *See* 20 C.F.R. § 404.1529; *Felisky*, 35 F.3d at 1037. While the inquiry into subjective complaints of pain must begin with the objective medical record, it does not end there. In *Duncan v. Secretary of Health and Human Services*, the Sixth Circuit set forth the basic standard for evaluating such claims.[23] 801 F.2d 847 (6th Cir. 1986). The *Duncan* test has two prongs. *Id*. First, the ALJ must determine whether there is objective medical evidence of an underlying medical condition. *Felisky*, 35 F.3d at 1039 (quoting *Duncan*, 801 F.2d at 853). The second prong has two parts: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Id.*

___

[23] Although *Duncan* only applied to determinations made prior to 1987, the Sixth Circuit has since held that *Duncan* continues to apply to determinations made after 1987. *See Felisky*, 35 F.3d at 1039 n.2.

This test does not require objective evidence of the pain itself. *Duncan*, 801 F.2d at 853 (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3rd Cir. 1984)).

Here, the ALJ satisfied the first prong of the *Duncan* test when he found that the plaintiff had the medically determinable impairments of COPD and adenocarcinoma of the lung. (Tr. 16, 18.) However, the ALJ found that the plaintiff did not meet the second prong of the *Duncan* test because, while her underlying medical conditions could be reasonably expected to cause some of the alleged symptoms, the ALJ found that the plaintiff's statements, "concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [plaintiff's] residual functional capacity assessment." (Tr. 18.)

Contrary to the plaintiff's allegation that the ALJ did not properly address her credibility, the ALJ, in fact, discussed the plaintiff's credibility in significant detail. (Tr. 18-20.) The ALJ noted that the plaintiff's "description of the severity of her pain has been so extreme as to appear implausible." (Tr. 18.) He then gave several reasons in support of his conclusion that the plaintiff's allegations were not credible.

First, the ALJ noted that the plaintiff's statements about her impairments and their impact on her ability to work did not match her description of daily activities. (Tr. 18-19.) Although the plaintiff alleged "constant" pain that is "always there," she reported being able to cook, clean, do laundry, wash dishes, drive, walk for exercise, and care for her two children. (Tr. 28-30, 36-37, 131.) The ALJ specifically noted that the plaintiff's nine-year-old son is autistic, yet the plaintiff cares for him "without any particular assistance, which can be quite demanding both physically and emotionally." (Tr. 19.) The ALJ also noted that the plaintiff testified to some limited work activity

after her alleged disability onset date. *Id.* While the ALJ recognized that this work activity did not constitute substantial gainful activity, it was inconsistent with the plaintiff's allegations of "constant" level-nine pain and supported the ALJ's finding that the plaintiff's daily activities were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (Tr. 18-19, 44, 133.)

The ALJ also noted that the plaintiff had worked "only sporadically" prior to her alleged disability onset date and that the plaintiff had stopped working in 2002 because her employer's business had been sold, not because of any disabling impairment. (Tr. 19.) The ALJ suggested that the plaintiff's sporadic work history "raise[d] a question as to whether the [plaintiff's] continuing unemployment [was] actually due to medical impairments." *Id.*

Next, the ALJ explained that the plaintiff's allegations of pain were not consistent with the objective medical evidence of record. *Id.* The ALJ discussed the fact that the plaintiff's pulmonary function tests and x-rays were unremarkable and inconsistent with her complaints. *Id.* In April 2004, pulmonary-function test results were normal and showed only a mild decrease in ventilation function. (Tr. 19, 236.) A July 2006 pulmonary-function analysis, which identified the plaintiff as a smoker, showed that she had "a mild obstructive lung defect." (Tr. 19, 318-19.) Likewise, the ALJ noted that the plaintiff's lung cancer surgery was successful, and as of January 2009, there had been no recurrence of lung cancer. (Tr. 19, 478.)

Additionally, the ALJ noted that the plaintiff's pain level appears to have been adequately controlled with pain medication. (Tr. 19.) In a pain questionnaire, the plaintiff reported that she had obtained "some" relief through pain medication. (Tr. 133.) For example, on August 19, 2005, the

plaintiff rated her pain at a 7-8 on a 10 point pain scale (tr. 325), but, by October 10, 2006, the plaintiff reported that Topamax was helping reduce her pain and rated her pain at a five on the pain scale. (Tr. 359.) The plaintiff in fact did not rate her pain as a nine on the pain scale until the hearing before the ALJ. (Tr. 44.) Moreover, while Dr. Cox prescribed pain medication from August 11, 2006, through December 8, 2006, when he variously prescribed Lyrica, Topamax, Tramadol, and Lamictal to treat the plaintiff's chest pain (tr. 359-64, 366, 411-16), he stopped prescribing pain medication in 2006. Notably, from December 8, 2006, through April 2008, Dr. Cox only prescribed Spiriva to treat asthma, Amitriptyline to treat depression, and Fluocinonide cream to treat a skin condition.[24] (Tr. 411, 462, 464-66, 468-76, 478.)

Finally, the ALJ noted that the plaintiff had made "a notably inconsistent statement" regarding when she stopped smoking. (Tr. 19.) At the hearing, the plaintiff testified that she stopped smoking in 2004, however, Dr. Chapman's November 2005 treatment notes indicate that she continued to smoke after she underwent surgery to remove the tumor on her lung. (Tr. 19, 248.) Similarly, Dr. Colburn's treatment notes indicate that in August 2005 the plaintiff was "smoking on occasion." (Tr. 346.)

The Court concludes that the ALJ properly weighed the evidence in the record, adequately explained his rationale, and did not err in determining that the plaintiff's subjective complaints of pain were not fully credible. In reaching his decision, the ALJ reviewed the plaintiff's medical

_____

[24] Although the plaintiff's doctors either considered or, in fact, did refer the plaintiff to a pain specialist (tr. 345, 361, 363, 415), there is nothing in the record to suggest that the plaintiff actually visited a pain specialist. In addition, there is no indication that Dr. Cox referred the plaintiff to a pulmonologist or any other specialist to address pleurisy or chest wall syndrome after her lung surgery.

records and the opinions of her medical providers and consultative examiners. (Tr. 18-20.) Additionally, the ALJ considered the plaintiff's testimony regarding her functional limitations, daily activities, medications, and treatment. *Id.* The ALJ's decision indicates that he complied with the *Duncan* test and 20 C.F.R. § 404.1529(c) in evaluating the plaintiff's credibility regarding her subjective complaints of pain.

## V. RECOMMENDATION

For the above stated reasons, it is recommended that the plaintiff's motion for judgment on the record (Docket Entry No. 13) be DENIED and the Commissioner's decision be AFFIRMED.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation, and must state with particularity the specific portions of this Report and Recommendation to which the objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

JULIET GRIFFIN
United States Magistrate Judge