IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| SAMANTHA A. WINNINGHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 2:11-cv-00032 |
| v. ) | |
| ) | Judge Nixon |
| CAROLYN W. COLVIN, ) | Magistrate Judge Griffin |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

# ORDER

Pending before the Court is Plaintiff Samantha A. Winningham's Motion for Judgment on the Administrative Record ("Motion") (Doc. No. 13), filed with a Brief in Support (Doc. No. 14). Defendant Commissioner of Social Security filed a Response. (Doc. No. 15.) Magistrate Judge Griffin subsequently issued a Report and Recommendation ("Report"), recommending that Plaintiff's Motion be denied and that the decision of the Commissioner be affirmed. (Doc. No. 16.) Plaintiff then filed Objections to the Report. (Doc. No. 17.) Upon review of the Magistrate Judge's Report and for the reasons discussed herein, the Court **ADOPTS** the Report in its entirety and **DENIES** Plaintiff's Motion.

I. BACKGROUND

*A. Procedural Background*

On October 20, 2006, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI"). (Tr. 98, 103.) In both applications, Plaintiff alleged disability with an onset date of November 8, 2004. (*Id.*) Plaintiff claimed disability due to chronic obstructive pulmonary disease ("COPD"), partial removal of her right lung, and

emphysema. (Tr. 121.) The applications were initially denied on January 23, 2007, (Tr. 63–66), and again upon reconsideration on May 8, 2007 (Tr. 73, 75). Plaintiff filed a timely written request for hearing on May 23, 2007. (Tr. 79.) On March 3, 2009 a hearing was held before Administrative Law Judge ("ALJ") Robert L. Erwin at which Plaintiff appeared and testified, along with Vocational Expert ("VE") Edward Smith. (Tr. 23–63.) On April 1, 2009, the ALJ ruled that Plaintiff was not entitled to SSI or DIB. (Tr. 14–22.) Specifically, the ALJ made the following findings of fact and conclusions of law:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2004.

2. The claimant has not engaged in substantial gainful activity since November 8, 2004, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: chronic obstructive pulmonary disease; adenocarcinoma of the lung (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently; stand and/or walk about six hours in an eight-hour workday; and sit about six hours in an eight-hour workday; except that she can do no more than occasional climbing; no more than occasional reaching, right shoulder, any direction; and must avoid concentrated exposure to temperature extremes.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on April 5, 1967 and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 8, 2004 through the date of this decision. (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 16–22.)

Plaintiff filed a request for review of the hearing decision on April 24, 2009 (Tr. 10.), and on February 1, 2011, the Appeals Council entered an order denying Plaintiff's request, thereby rendering the ALJ's decision the final decision of the Commissioner (Tr. 1–3). Plaintiff filed this action on March 24, 2011, seeking judicial review of the ALJ's final decision under 42 U.S.C. §§ 405(g) and 1383(c). (Doc. No. 1.) Pursuant to Magistrate Judge Griffin's June 23, 2011, order (Doc. No. 12), Plaintiff filed a Motion for Judgment on the Administrative Record (Doc. No. 13), with a Brief in Support (Doc. No. 14), on July 25, 2011. Defendant filed a Response on August 23, 2011. (Doc. No. 15.) On July 19, 2013, Magistrate Judge Griffin issued the Report, recommending that Plaintiff's Motion be denied, and the decision of the Commissioner be affirmed. (Doc. No. 16 at 32.)

On August 2, 2013, Plaintiff filed Objections to the Report, specifically objecting, however, only to the Report's conclusion that the ALJ properly rejected the opinion of Plaintiff's treating physician. (Doc. No. 17.)

*B. Factual Background*

The Court adopts the facts as stated in the Review of the Record in Magistrate Judge Griffin's Report. (Doc. No. 16 at 2–12.)

## II. STANDARD OF REVIEW

The Court's review of the Report is *de novo*. 28 U.S.C. § 636(b). This review, however, is limited to "a determination of whether substantial evidence exists in the record to support the [Commissioner's] decision and to a review for any legal errors." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Accordingly, the reviewing court will uphold the ALJ's decision if it is supported by substantial evidence. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Substantial evidence is a term of art and is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol. Edison*, 305 U.S. at 229).

"Where substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)). This standard of review is consistent with the well-settled rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations, because these factual determinations are left to the ALJ and to the Commissioner. *Hogg v. Sullivan*, 987

F.2d 328, 331 (6th Cir. 1993); *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the Court would have come to different factual conclusions as to the Plaintiff's claim on the merits than those of the ALJ, the Commissioner's findings must be affirmed if they are supported by substantial evidence. *Hogg*, 987 F.2d at 331.

### III. PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT

Plaintiff objects to the recommendation of Magistrate Judge Griffin that the ALJ properly rejected the opinion of treating physician, Dr. Michael T. Cox, who Plaintiff alleges noted "limitations that would not allow Ms. Winningham to perform substantial activity, even at the sedentary level." (Doc. No. 17 at 1.) In particular, Plaintiff argues that no other examining doctor gave an opinion contrary to the opinion of Dr. Cox, Dr. Cox's opinion should be given complete, or at least substantial, deference. (*Id.* at 2–3.) Further, Plaintiff contends that the ALJ's failure to address Dr. Cox's 2009 medical assessment, specifically the portion regarding Plaintiff's work restrictions, is not harmless error. (*Id.* at 3.)

At the administrative level of review, a claimant's case is considered under a five-step sequential evaluation process as follows:

1. If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

2. If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

3. If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent; if a listing is met or equaled, benefits are owing without further inquiry.

---
[1] The Listing of Impairments is found at 20 C.F.R. pt. 404 subpt. P, app. 1 (2010).

5

4. If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity ("RFC") (*e.g.*, what the claimant can still do despite his or her limitations); if the claimant has the RFC to do his or her past relevant work, the claimant is not disabled. If the claimant is not able to do any past relevant work or does not have any past relevant work, the analysis proceeds to step five.

5. At the last step it must be determined whether the claimant is able to do any other work. At this step, the Commissioner must provide evidence of the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and RFC.

20 C.F.R. §§ 404.1520(a)–(g), 416.920(a) (2014); *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). If, at step five, the ALJ finds that the claimant cannot perform past relevant work or does not have past relevant work, he or she must consider whether the claimant can perform other work, by considering characteristics such as the claimant's RFC, age, education, and work experience. *Moon*, 923 F.2d at 1181; 20 C.F.R. § 404.1520(f)(1).

In this case, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability. (Tr. 16.) At step two, the ALJ found that Plaintiff has severe impairments of COPD and adenocarcinoma of the lung. (*Id.*) At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal one of the listed impairments. (*Id.*) At step four, the ALJ determined that Plaintiff is unable to perform any of her past relevant work. (Tr. 20.) At step five, the ALJ found that Plaintiff could work as a textile checker, officer helper, or storage facility rental clerk. (Tr. 21.) The ALJ made the above findings based on the medical evidence of the entire record, testimony by the VE and Plaintiff, and both treating physician and non-treating consulting physicians' assesments.

6

Plaintiff's objection appears to challenge the ALJ's determination at step five, where he found that Plaintiff could perform other work, based on the restrictions suggested by Dr. Cox. (*See* Doc. No. 17.) While Plaintiff does not explicitly state her first objection for improper rejection of Dr. Cox's opinion relates to Dr. Cox's 2007 medical assessment, the 2007 medical assessment was the only assessment by Dr. Cox that the ALJ explicitly rejected. Accordingly, similar to Magistrate Judge Griffin's analysis, the Court first evaluates whether the ALJ's rejection of Dr. Cox's 2007 medical assessment was supported by substantial evidence, and then turns to whether the ALJ's failure to explicitly address Dr. Cox's 2009 medical assessment was harmless error.

*A. The ALJ's Rejection of Dr. Cox's 2007 Medical Assessment*

Under 20 C.F.R. §§ 404.1502 and 416.902, a "treating source" is defined as the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimaint], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." Dr. Cox treated Plaintiff at the Livingston Clinic from August 2006 through November 2008. (Tr. 359–67, 410–23, 447–55, 462–75.) The medical records from this time period show that Dr. Cox examined and observed Plaintiff on multiple occasions. (*Id.*) Accordingly, based on the regulations and the record in this case, Dr. Cox is properly classified as a treating medical source of Plaintiff.

The medical opinion of the treating physician should be given complete deference if it is not contradicted; otherwise, it deserves substantial deference. *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1370 (6th Cir. 1991); *Shelman v. Heckler*, 821 F.2d 316, 320 (6th Cir. 1987). Additionally, reliance upon the opinion of a treating physician over the contrary opinion of a

7

consulting physician is particularly appropriate where the severity of a claimant's impairment fluctuates over time. *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1054 (6th Cir. 1983). If the ALJ rejects the opinion of a treating physician, he must provide a basis for doing so. *Shelman*, 821 F.2d at 321. However, the Sixth Circuit has repeatedly held that the ALJ may properly reject the opinion of a treating physician where that opinion is not sufficiently supported by medical findings. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (en banc); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994). For example, in *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004), the Sixth Circuit held that substantial evidence supported the rejection of a treating physician's opinion that a claimant could stand or walk for no more than two hours in an eight-hour day where there were contrary medical opinions in the record and there was no objective evidence of any impairment affecting his lower extremities. Thus, Sixth Circuit precedent requires consideration of both medical evidence and vocational factors in assigning weight to a treating source's opinion, and, absent adequate support in the record, the ALJ is not bound by a treating physician's statement that a claimant is "disabled." *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir 1986); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir 1984).

Based upon review of the Report and the administrative record, the Court agrees with the Magistrate Judge's finding that the ALJ did not err in rejecting Dr. Cox's 2007 medical assessment (Tr. 432–35) because it was not supported by the other objective medical evidence in the record, including pulmonary tests and X-rays, assessments by Tennessee Disability Determination Services ("DDS") non-examining consulting physicians, and reports by Plaintiff's surgeon and previous treating physician. Furthermore, the Court notes Plaintiff's testimony at

the hearing is similarly inconsistent with the limitations provided in Dr. Cox's 2007 medical assessment.

First, the pulmonary tests and X-rays performed since Plaintiff's lung surgery on November 8, 2004, which Plaintiff alleges is the cause of her onset of disability, did not show any signs of severe disease or post-surgical complications that would be consistent with the limitations proscribed by Dr. Cox. (*See* Tr. 432–35.) On July 12, 2006, shortly after her surgery, Dr. Kenneth Colburn performed a pulmonary test, which indicated only "a mild obstructive lung defect" and that such was "[i]nsignificant at this time." (Tr. 289.) Another pulmonary test performed on January 16, 2007, showed "normal spirometry"[2] and "mild restriction" in lung function capability. (Tr. 417–19.) Finally, a third pulmonary test performed by Dr. Colburn on July 12, 2008, again noted only "a mild obstructive lung defect." (Tr. 318–19.) Similarly, the X-rays of Plaintiff's chest performed in 2004, 2005, 2006, and 2007 showed no acute disease. (Tr. 262, 401, 403, 459.) The X-ray reports indicated that there were "post-surgical changes" regarding Plaintiff's lungs. (*See, e.g.,* Tr. 403.) However, the accompanying notes also show that the complications were not severe or disease-related as the notes also provide that the chest appeared "stable," there were no "pleural effusions" or "pleural abnormalities," the lungs were clear, "cardiovascular structures [were] normal," and there were no signs of acute disease. (Tr. 262, 401, 403, 459.) In fact, Plaintiff's most recent X-ray report on January 14, 2009, indicated "[n]o mass or infiltrate within the lungs [,n]o pneumothorax[3] . . . [ n]o pleural effusion," and

---

[2] Spirometry is "the measurement of the breathing capacity of the lungs." 26 *Dorland's Illustrated Medical Dictionary* 1560 (28th ed. 1994) (hereinafter *Dorland's*).

[3] A pneumothorax is "[a]n accumulation of air or other gas in the pleural cavity, the air may enter due to a chest wound, a lung rupture, or diseased lung tissue, causing great pain." *Webster's New Twentieth Century Dictionary of the English Language* 1298 (The World Publishing Co. 1951).

normal pulmonary vascularity. (Tr. 457.) The absence of any kind of abnormality or disease in Plaintiff's test results provide adequate support for the ALJ's rejection of the restrictive limitations requested by Dr. Cox's 2007 medical assessment. (*See* Tr. 432–35.)

Second, additional records of Dr. G. Todd Chapman, who performed Plaintiff's thoracotomy[4] on the alleged onset date, November 8, 2004, and Dr. Colburn, who treated Plaintiff from November 16, 1999, through August 31, 2006, are inconsistent with Dr. Cox's 2007 medical assessment. Plaintiff alleges that she suffered back pain as a result of post-surgery pleurisy,[5] which started in 2004, and that Dr. Chapman informed her about on January 14, 2009, at a surgical checkup.[6] (Tr. 40, 476, 478.) During this examination, Dr. Chapman noted that Plaintiff was "doing well," had "occasional pleurisy," and advised Plaintiff to "continue general medical care under the direction of Dr. Cox." (Tr. 478.) Dr. Chapman also noted that Plaintiff was "in no acute distress." (*Id.*)

The Court acknowledges that on August 19, 2005, Plaintiff complained to Dr. Colburn of back and rib pain, but she also apparently stated that such had "come & gone" for four years. (Tr. 346.) On July 31, 2006, Dr. Colburn diagnosed Plaintiff with chronic post-operative rib and back pain, but did not prescribe any medication. (Tr. 324.) However, Dr. Colburn's notes do not seem to indicate any form of severe complication, and the medical record appears to indicate the rib and back pain preceded Plaintiff's surgery.

Third, Dr. Cox's own 2009 medical assessment, when compared to his 2007 medical assessment, proscribes significantly fewer restrictions. Dr. Cox's 2009 medical assessment

---

[4] A thoracotomy is a "surgical incision of the wall of the chest." *Dorland's* at 1705.

[5] Pleurisy is "inflammation of the pleura, with exudation into its cavity and upon its surface. It may occur as either acute or a chronic process." *Dorland's* at 1307.

[6] Dr. Chapman appears to be the only doctor who diagnosed Plaintiff with pleurisy.

10

suggested the following restrictions, with respective contrasting 2007 restrictions in parenthetical: unlimited sitting (four hours) in an eight-hour workday, unlimited pushing/pulling (limited in upper extremities), no alteration between sitting and standing (requires alteration every 30 minutes), pain causing interference with attention and concentration occurs often (frequently), need for unscheduled breaks every two hours (every hour), unlimited reaching in all directions (limited reaching). (*Compare* Tr. 432–35 *with* Tr. 479–82.) According to the 2009 medical assessment, Plaintiff's conditions were improving and Dr. Cox eased or eliminated some of Plaintiff's restrictions completely. While Dr. Cox's 2009 medical assessment was not explicitly addressed by the ALJ,[7] it clearly contradicts many of the restrictions described in his 2007 medical assessment. Thus, the other medical evidence in this case—results of tests and X-rays, notes of Dr. Colburn and Dr. Chapman, and comparison of the two assessments by Dr. Cox—does not indicate impairments with a degree of severity that correspond with the restrictions in Dr. Cox's 2007 medical assessment.

Fourth, Plaintiff's testimony at the hearing about her lifestyle were inconsistent with the restrictions imposed by Dr. Cox. Plaintiff testified that she lived alone with her two children, a nine-year-old with autism and a twelve-year-old. (Tr. 29, 43.) Plaintiff indicated that she regularly performed household chores, including cooking, cleaning, and laundry, herself. (Tr. 36.) Plaintiff stated that she took naps during the daytime, but only from time to time. (Tr. 35.) Moreover, Plaintiff stated that she drove her vehicle Monday through Friday and took her kids to school, remaining with her son at school for about an hour two to three days per week. (Tr. 30, 43.) On the other days, Plaintiff's medical conditions prevented her school visits. (Tr. 43.)

---

[7] The Court addresses Plaintiff's objection to the ALJ's lack of explicit reference to this assessment in his determination *infra* at Part III.B.

Plaintiff also stated that she worked as a receptionist at a newspaper for two weeks for one hour per day in February 2009. (Tr. 31–32.) Although Plaintiff testified that she would not be able to do such work for the entire day, she was able to work for two weeks in this brief position without quitting due to her medical complications. (Tr. 44.) While these daily activities alone are likely insufficient to contradict Dr. Cox's 2007 medical assessment, when viewed in combination with the ALJ's discounting of Plaintiff's subjective complaints of pain,[8] such evidence provides further support for the ALJ's finding that Dr. Cox's 2007 medical assessment was not supported by other evidence of record.

Accordingly, the Court finds there is substantial evidence in the record to support the ALJ's decision to not assign substantial weight to Dr. Cox's 2007 medical assessment. The Court next turns to Dr. Cox's 2009 medical assessment.

B.  *The ALJ's Failure to Explicitly Address Dr. Cox's 2009 Medical Assessment*

Under 20 C.F.R. § 404.1527(c), the Commissioner is required to evaluate each opinion received from a medical source in making her determination regarding a claimant's disability. In particular, as noted above, § 404.1527(c)(2) requires the Commissioner to give "good reasons" for the weight assigned to a treating source's opinion. Ordinarily, where the ALJ fails to properly address a treating source's medical opinion, i.e. give "good reasons" for the weight assigned to it, remand is required based on violation of a "procedural right" afforded to the

---

[8] Plaintiff's Motion for Judgment on the Administrative Record was based on two grounds: (1) the ALJ's improper rejection of Dr. Cox's opinion, the same as is before the Court on Plaintiff's Objection to the Report, and (2) the ALJ's improper discounting of Plaintiff's subjective complaints regarding her pain and limitations. (Doc. No. 14 at 11–15.) In her Report, Magistrate Judge Griffin found the ALJ properly discounted Plaintiff's subjective complaints. (Doc. No. 16 at 27–32.) As Plaintiff has not objected to this portion of the Report and the Court finds such to be well-founded, the Court adopts this uncontested portion of the Report and finds it serves as additional support in reviewing the contested portion of the Report.

claimant. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004). Violation of the procedural requirement of § 1527(c)(2), however, may be harmless error in three situations:

> (1) "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; or (3) "where the Commissioner has met the goal of § 1527(c)(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation."

*Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (quoting *Wilson*, 378 F.3d at 547). Under the third situation, "the procedural protections at the heart of the rule may be met when the 'supportability' of a doctor's opinion, or its consistency with other evidence in the record, is *indirectly* attacked via an ALJ's analysis of a physician's other opinions or his analysis of the claimant's ailments." *Id.* Additionally, as contemplated under the second circumstance in *Wilson*, the ALJ's failure to discuss the report of the claimant's treating physician may be harmless error where the ALJ proscribes limitations consistent with those identified by the treating physician. *Heston v. Comm's of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (not using the framework of *Wilson*).

Plaintiff claims that the ALJ's failure to address Dr. Cox's 2009 opinion is not harmless in that a person with the restrictions identified by the 2009 medical assessment would have no jobs available to them, based on the VE's testimony. (Doc. No. 17 at 3.) As an initial matter, the testimony cited by Plaintiff deals with the VE's opinion regarding the restrictions in Dr. Cox's 2007 medical assessment, which clearly imposes much more stringent restrictions than his 2009 medical assessment. (*See* Tr. 51–52.) The Court agrees with Plaintiff and the Magistrate Judge that the ALJ's failure to explicitly address the 2009 medical assessment was in error. However, after review of the record, the Court agrees with the Report that such error was harmless. The

ALJ gave clear reasons in his decision for his rejection of Dr. Cox's 2007 assessment, which are consistent with the reasons discussed above. (Tr. 16–22.) Despite not addressing the 2009 medical assessment, the limitations adopted by the ALJ in his RFC assessment are generally similar to those found in Dr. Cox's 2009 assessment. (Tr. 20.) Even though the ALJ did not give any reasons for the rejection of Dr. Cox's later opinion, the ALJ implicitly addressed the limitations in the 2009 assessment through the evaluation of Dr. Cox's 2007 opinion.

The ALJ implicitly adopted Dr. Cox's 2009 lifting limitations, occasional climbing, limited exposure to extreme temperature, and six hour standing/walking capacity in an eight-hour workday. (*Compare* Tr. 18–20 *with* Tr. 479–82.) The ALJ's limitations on Plaintiff's sitting capacity (about six hours in an eight-hour work day) and reaching (occasional) were *more* restrictive than Dr. Cox's 2009 medical assessment of unlimited sitting and reaching. (*Id.*.) Accordingly, under the second *Wilson* circumstance, the ALJ substantially adopted/made similar findings to Dr. Cox's 2009 medical assessment regarding Plaintiff's limitations in these areas.

The ALJ did not, however, adopt all of the limitations contained in Dr. Cox's 2009 medical assessment. In particular, the ALJ did not adopt the following limitations: that Plaintiff will have to take unscheduled breaks every two hours during an eight-hour work day; that Plaintiff will be absent from work more than four times per month; and environmental limitations (other than the extreme temperatures). (*Compare* Tr. 18–20 *with* Tr. 479–82.) Both the 2007 and 2009 assessments contained these limitations, with the only exception being the 2007 assessment provided for unscheduled breaks every hour. (Tr. 432–35; 479–82.) As previously explained, the ALJ gave good reasons supported by substantial evidence for rejecting these portions of the 2007 medical assessment, based on the lack of objective medical evidence to support the severity of the restrictions requested by Dr. Cox. *See supra* Part III.A. Thus, the

ALJ implicitly provided acceptable reasons to not to adopt these identical limitations in Dr. Cox's 2009 medical assessment in his analysis of Dr. Cox's 2007 medical assessment. *See Friend*, 375 F. App'x at 551.

Accordingly, as the ALJ made findings similar to or more favorable to Plaintiff than Dr. Cox's 2009 medical assessment as to most limitations and implicitly provided good reasons for rejecting the remaining limitations, the Court finds the ALJ's failure to explicitly address Dr. Cox's 2009 medical assessment amounts to harmless error.

## IV. CONCLUSION

For the reasons stated above, the Court **ADOPTS** the Magistrate Judge's Report in its entirety. Plaintiff's Motion is **DENIED** and the decision of the Commissioner is **AFFIRMED**. The Clerk of the Court is **DIRECTED** to close the case.

It is so ORDERED.

Entered this the ___26th___ day of June, 2014.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT